STATE v. TUCKER HORNE.

*No Evidence—Assault.*

1. Where the Judge below is requested to charge that there is no evidence of a fact in issue, the evidence most favorable to the adverse party must be considered alone, and if it is any evidence at all to establish the fact, the charge must be refused.

2. Where a person is obstructed in the exercise of a legal right, or prevented from doing what he proposed to do, and may lawfully do, by a display of physical force, as in brandishing a deadly weapon with violent threats of using it, and this in such proximity as admits of an effectual execution of the menace, in consequence of which such person desists, an assault is consummated.

(*State* v. *Myerfield*, Phil. 108; *State* v. *Davis*, 1 Ired., 125; *State* v. *Morgan*, 3 Ired., 186; *State* v. *Hampton*, 63 N. C., 13; *State* v. *Church, Ibid.*, 15, cited and approved).

This was an INDICTMENT for assault, tried before *Philips, Judge*, and a jury, at Spring Term, 1884, of RICHMOND Superior Court.

There was a verdict of guilty, and from the judgment thereon, the defendant appealed.

The facts appear in the opinion.

*Attorney General*, for the State.
*Messrs. C. W. Tillett* and *W. A. Guthrie*, for the defendant.

SMITH, C. J. The defendant is charged with an assault upon the person of W. F. Shankle, and found guilty on his trial before the jury.

The testimony of the prosecutor was in substance as follows:

Witness had some time before bought a cow from the defendant, and the cow was brought by two persons, whom he had sent after her, to his store, and with a rope over her horns, tied to a post on the side of the road opposite to the plaintiff's store. The witness went out of his store towards the place where the cow had been secured, and found that the defendant had disengaged the rope, and, backing himself, was by kicks driving the cow off.

Defendant then went to his crib, got his gun and with one barrel cocked and his finger on the trigger and the gun held in his arms, but not pointed towards the witness, said if any one laid hands on the cow, he would blow his brains out. Witness asked, "what do you mean?" and was answered, "I mean to die and go to hell in a few minutes." Witness made no attempt, and desisted in consequence of this action and these threats, and re-entered his store. The defendant, while driving the cow, was face to face with the witness, and seemed to think that witness in going after the rope left on the post, intended to take and tie the cow, but witness had no such intention after these demonstrations.

The court refused to charge, as requested, that upon the evidence the defendant was not guilty and gave these instructions:

1. If the defendant was in possession of the cow, and made the threats testified to, but made no offer or attempt to use the gun, though he had it in his possession, he would not be guilty.

2. If the defendant used insulting language to Shankle after he had unfastened the cow, with the gun on his arm, but did not present it or offer to use it, and did not put the prosecutor in fear by his action and threats and cause him to change his course, he would not be guilty.

3. If Shankle went out, after defendant had released the cow, to a place where he had a right to be, and the defendant stood face to face with him and used the threatening and insulting language, having his gun loaded, with one barrel cocked and the finger on the trigger, and the defendant, by his threats and actions put Shankle in fear and caused him to leave sooner than he would otherwise have done, he would be guilty of an assault, though he did not level the gun at the prosecutor.

There was other testimony which we have not reproduced because the exception pressed before us is, that in no aspect of the evidence was an assault committed, and this requires the presentation of the case upon the testimony most favorable to the State. If, upon any state of the facts, the jury were warranted in finding an assault, there was no error in finding the first instruction affirmatively.

Do the facts, as represented in the testimony of the prosecutor, constitute a criminal assault?

"It is difficult in practice," says Pearson, C. J., in *State* v. *Myerfield*, Phil., 108, reiterating the language of Gaston, J., in *State* v. *Davis*, 1 Ired., 125, "to draw the precise lines which separate violence menaced, from violence begun to be executed, for not until these lines are passed can there be an assault."

In this case the defendant was with a pistol in his hand, sometimes bearing upon the prosecutor and sometimes not, and swearing that if the latter came in he would shoot him. Meanwhile the prosecutor was walking to and fro in the street opposite the defendant's grocery, threatening to whip the defendant if he came out. The Court held that the use of the deadly weapon in brandishing it about, and occasionally presenting it at the defendant, although qualified with a condition which he had not the right to impose, was not by the explanatory words divested of its character as a criminal offence and "that an offer to strike with a deadly weapon cannot be thus explained."

In *State* v. *Morgan*, 3 Ired., 186, one Cantwell, a constable, had, under an execution, seized a gun of the defendant's, and had it in possession in his yard when the latter came up with an uplifted axe in his hands and, within striking distance, demanded its return or he would strike. The gun was not delivered up, but a parley ensued and an arrangement was made. This was declared to be an attack begun, and it was not the less so because not carried into complete execution, the principle being, that such a use of a deadly weapon to enforce performance of some required act, when the act is done, is itself an assault.

In *State* v. *Hampton*, 63 N. C., 13, the prosecutor was passing down the steps of the court-house, when he encountered the defendant, who, turning himself about within reach and with his right hand clenched, his right arm bent at his side, but not drawn back, said, "I have a great mind to hit you." He had previously threatened to cow-hide the prisoner if the crowd would go with him. In consequence, the prosecutor turned away and passed out

by another doorway. This violent obstruction offered to the prosecutor's passing out, compelling him to seek other means of egress from the building, was held to be an assault.

In *State* v. *Church, Ibid.,* 15, the facts were these: The defendant and some others, on a day of public worship, were sitting outside the church some 6 or 7 steps distant, when the prosecutor appeared. The defendant spoke to him thus: "We have no use for you in this company—go back, you shall not come here." The prosecutor stopped, when defendant rose to his feet and said, addressing the prosecutor, "I have a pistol," at the same time placing his hand on it, where belted around his body. The prosecutor retired slowly, followed by the defendant, not over ten steps apart, who urged him to go or he would shoot him, and drew the pistol from its scabbard, but did not cock it nor present it towards the prosecutor.

The Court below held this to be no assault, but this ruling was reversed on the appeal, and Reade, J., for the Court, says: "An offer of violence is an assault, even if it be accompanied with a declaration that violence will be forborne upon a condition, which the actor had no right to impose."

The rule deducible from these adjudications seems to be, that where a person is obstructed in the exercise of a legal right, or prevented from doing what he proposed to do, and may lawfully do, by a display of over-awing physical force, as in the brandishing of deadly weapons with violent threats of using them, and this in such proximity as admits of an effectual execution of the menace, in consequence of which such person is intimidated and desists, these acts constitute an assault.

The case before us may not possess all the constituent elements found in those referred to, yet we think it may be fairly brought within the scope of the general principle which they establish. The prosecutor, if we accept his version of the matter, was the owner and in lawful possession of the cow, she being secured near the store where he was present. The defendant removed the fastening, and was, while backing himself, driving the cow

away, while, with his face to the prosecutor, the gun in his hand cocked and one finger upon the trigger, he declared to the prosecutor his intent to blow out the brains of any one, who interfered and laid hands upon the cow.   In answer to an inquiry as to what he meant, he says to the prosecutor in words of equal violence and indicating a murderous intent upon himself in carrying out his purpose, "I mean to die and go to hell in a few minutes." In consequence of these demonstrations of menaced violence if interrupted, the prosecutor forbore to pursue and take his cow, returning into his store.   The cow was then carried away.

This, we think, is more than violence threatened, it is *violence begun,* and made successful by the over-awing effect produced on the mind of the prosecutor.   The gun, though not pointed, was held in a position admitting of instant use, and the purpose to use it, even to the death, manifested by both language and conduct, and thereby the prosecutor was prevented from asserting his right and regaining his possession.

As the jury may have taken this view of the testimony, it would have been erroneous to tell them if they believed the evidence, that is, the testimony of any of the witnesses, the defendant was not guilty.

We see no error in the direction as to what facts, if found by the jury, would constitute the offence charged.

There is no error, and this will be certified to the end that the court below proceed to judgment.

No error.                                        Affirmed.